And we like the hat. Oh thank you. I appreciate that. I did ask. Yes you did. That's fine. May it please the court, counsel, I'm Rebecca Koffel. I represent Kevin Williams at this level. Mr. Williams in January of 2005 had a tonic-clonic seizure. Tonic-clonic seizure is commonly known as grand mal seizure. He went to the emergency room and then went to see Dr. Bender, who is a neurologist, who diagnosed a seizure disorder and prescribed medication. Subsequent to that he went to Dr. Bender, I believe in March of 2005. Dr. Bender had EEG done. The EEG was normal. I would note that EEGs are often normal when they are done, particularly if a person is on medications, and may be normal even if a person has overt, ongoing seizures. Dr. Bender also had an MRI done. That MRI, Dr. Bender characterized as abnormal. In fact, at 210 in the excerpts of record is the MRI and it's noted that it is a mesial temporal sclerosis. It is an abnormal MRI. Dr. Bender later states that that kind of brain abnormality may make it very difficult to control the seizures with medication. In fact, Mr. Williams continued to have what are characterized in the record as complex partial seizures. These are also commonly known as pedemol seizures, also may be known in some instances as absence seizures. Doesn't the whole gist of your appeal, though, depend upon whether or not the ALJ correctly disregarded or devalued the testimony of Dr. Arnold? Dr. Arnold's report and Mr. Williams' testimony himself as to the sequelae and problems he had with the seizures, yes. So why is it that you believe the ALJ erred in devaluing or dismissing the testimony of Dr. Arnold and Mr. Williams? He erred in dismissing the testimony of Dr. Arnold. Dr. Arnold was a consultative evaluator. He met with Mr. Williams, did extensive testing, including the MMPI, the MM million scale, and the P3, as well as the mini mental status evaluation, which had also been done by Dr. McKnight. And he incorporated Dr. McKnight's finding on the Wexner memory test that Dr. McKnight had done into his findings. He certainly had Dr. McKnight's report before him, found also, as did Dr. McKnight, a cognitive disorder, an OS, not otherwise specified, as well as going ahead and finding, based on the results of the MCMI-3 and the correlation with that Mr. Williams also had a somatoform disorder. Dr. Arnold saw Mr. Williams in 2007. I believe it was May of 2007. He had seen Dr. McKnight in 2005. Dr. McKnight, based on the discrepancy in the times, did not have Dr. Arnold's report. Dr. Mee, who did the records review for the Division of Developmental Services, the DDS, did not have Dr. Arnold's report. Dr. Mee reviewed records in, I believe, September of 2005. He did have Dr. McKnight's report. Dr. Mee's report has testing that is not included in any of the other psychological records. It is a thorough report. You mean Dr. Arnold? Sorry, Dr. Arnold. Thank you, Your Honor. I apologize. And it poses a question, though. Dr. McKnight actually did see and have a personal evaluation with your client, correct? He did in 2005, Your Honor. Does that mean that any time a subsequent consult occurs after a previous consultation that we should reject the previous consultation? Your Honor, I don't think you should reject the previous consultation, and I'm not asking you to reject Dr. McKnight's report. I'm asking you not to reject, and I would have asked the ALJ, not to reject Dr. Arnold's report. What about when the two seem to arrive at inconsistent conclusions? I don't believe they arrive at inconsistent conclusions. They arrive at different conclusions, only in that Dr. Arnold did different testing than Dr. McKnight did. Dr. Arnold certainly didn't dispute Dr. Arnold's diagnoses. In fact, he included his diagnoses, not only the diagnoses, but also noting that based on Dr. Arnold's, or Dr. McKnight's report, which Dr. Arnold had, that it appeared that Mr. Williams wasn't being absolutely forthright to Dr. Arnold regarding his drug and alcohol history, and his criminal history as far as that goes to have a DUI in 2003. What do we do about that in terms of the credibility finding pertaining to your client? I don't think that has anything to do with the credibility, and the credibility as to Mr. Williams goes primarily from my standpoint in the record as to the problems he had with the seizures. But isn't there some case law suggesting that lack of forthrightness with regard to drug and alcohol use is pertinent to an overall credibility determination as to other things he was saying? Certainly. It also goes to the problem with drug and alcohol use of the tendency of people to deny that they do so, that they have used or they have I don't think it goes though to credibility finding as to the problems Mr. Williams was having with ongoing of the complex partial seizures, the absent seizures. I don't think it goes to the credibility as to whether or not he had sequelae from those seizures that limited his ability to respond even after the seizures might have resulted from drug and alcohol use. No, I do not believe there's anything in the record that the seizures might have resulted from the drug and alcohol use. Dr. Britt certainly found the seizures probably resulted from the problems he had as a small child with meningitis and with high fevers and that they were a direct result as the way I read the record of the mesial temporal sclerosis that was found on the 2005 MRI. I would not disagree that some of his depression perhaps may have been related that was found by Dr. Arnold might not but have been related to the drug and alcohol use that it was prior. I don't believe that that has anything to do with the seizures which are the primary basis of his disability. The dysthymia, the somatoform disorder are additional severe impairments that this man had. They are additional impairments that limit his ability to work and I would like to reserve one minute if I could. You sure can. Thank you. Good morning, Your Honors. May it please the Court. My name is Mike Howard representing the Commissioner in the case of Williams v. Astru. Your Honors, I believe the evidence in this case is fairly clear. Plaintiff suffered from meningitis as a child which later in life resulted in epilepsy and a form of cognitive impairment that limited his working memory. The LJ made his decision acknowledging those impairments and gave weight to the opinions of plaintiff's treating neurologist and an examining psychologist, Dr. McKnight, who addressed the issue of how impaired was plaintiff's working memory. The LJ rejected the opinion of Dr. Arnold who suggested that plaintiff's seizures were grossly disproportionate to the objective medical evidence by suggesting that plaintiff had a somatoform disorder. So in the end, this is a case about the substantial evidence standard of review and plaintiff, I submit, fails to show error under that standard. I'd like to address the issue of credibility before addressing the issue of Dr. Arnold's opinion. On the credibility issue, Your Honor, Judge Berzon is correct that the case law in the Ninth Circuit holds that inconsistent statements about drug and alcohol use can impeach a person's credibility about their symptoms generally. Essentially, the LJ is assessing the person's reliability as a witness and whether their testimony should be given full weight. There are also inconsistent statements in this case about the reasons the plaintiff left his job at Select Farms in 2006 to 2007. These are widely varying statements in his meetings with Dr. McKnight, Dr. Arnold, and at the hearing before the LJ. These also impeach credibility and they appear to have been conceded at page two of plaintiff's reply brief. So I believe the credibility finding in this case should be affirmed on those  And I think that's what we found not credible about, exactly. Well, Your Honor, there was, I believe it's at page 26 to 27 of the LJ's decision. There are no specific statements that the LJ isolated and questioned specifically, but the LJ did question the plaintiff's claims regarding the extent of his functional limitations. I believe that is what the LJ notes. Counsel says that even assuming that he made misstatements, that there isn't any true inconsistency between Dr. Arnold and Dr. McKnight in terms of the two evaluations, and therefore they can be harmonized and that ought to be sufficient to find him disabled. So how do you respond to that? Your Honor, I would disagree with plaintiff's assertion. I think that argument raises multiple issues. One of the major issues is the plaintiff's assertion that the two tests conducted by Dr. Arnold, the Minnesota Multiphasic Personality Inventory and the Millon Clinical Inventory, should be given privileged status and outweigh other evidence in the case. And that somehow these are the two tests that diagnosed an underlying dysthymic disorder, which is a form of depression, and a somatoform disorder. And that somehow these impairments went unnoticed by other experts in the case. The LJ provided several reasons to reject Dr. Arnold's opinions based on those tests. The primary one, I believe, is that it is inconsistent with the record as a whole. Plaintiff's treating neurologist and Dr. McKnight acknowledge that plaintiff suffered from a form of epilepsy and they had a cognitive impairment. There is no question as to whether the seizures were grossly disproportionate to the objective medical evidence. Only Dr. Arnold makes that suggestion. And Dr. Arnold, I would note in the facts statement of my brief, I noted that Dr. Arnold may not have been provided with the treatment notes of the neurologist, Dr. Britt, which made the explanation based on the MRI that plaintiff did indeed suffer from epilepsy. So, I had trouble following your last argument. He suffered from epilepsy, we know that. What did Dr. Arnold say that he didn't say he did suffer from epilepsy? No, Your Honor. The diagnosis of undifferentiated somatoform disorder as that diagnosis is described in the DSM-IV manual suggests that either the complaints, the person's complaints, are unsupported by objective medical evidence or grossly disproportionate to the objective medical evidence. And because Dr. Arnold appeared to acknowledge a seizure disorder of some form, it appears that he would have intended at the very least that plaintiff's seizures were grossly disproportionate to the objective medical evidence. That's a problem I'm not understanding. What do you mean that he, when you say his seizures were grossly disproportionate to the evidence, you mean that his reports of his seizures, he didn't have the seizures he was reporting? Is that what you're saying? Well, I believe Dr. Arnold's opinion is, could be, it is somewhat unclear. Dr. Arnold did give a rule-out diagnosis for pseudoseizures at the last page of his report, which refers to seizures that are caused by a person having psychological trauma and not having a physiological or medical basis. And a rule-out diagnosis, of course, means that he doesn't have enough evidence to rule it out. So Dr. Arnold's opinion, at the very least, could be read as suggesting that plaintiff has actual seizures which are unsupported by any physiological findings. And the ALJ rejected that opinion of his, along with all of his other opinions that plaintiff suffers from marked limitations, as being inconsistent with the evidence as a whole. I would also note, on the subject of Dr. Arnold's opinion, that plaintiff is generally challenging it on this basis alone, that it was inconsistent with the evidence as a whole. Plaintiff has not challenged the ALJ's findings that Dr. Arnold's opinions are inconsistent with plaintiff's daily activities and inadequately supported by Dr. Arnold's own examination notes and observations. So plaintiff has only challenged essentially one of the grounds that the ALJ gave to reject Dr. Arnold's report. Does he have full-time custody of his daughter? I mean, for most of the years, is that what this says? Your Honor, after the divorce, which was in 2006 to 2007, I believe there was he did not have full custody. I believe that varied. And he had his daughter only for periods of time. There were a number, on the subject of daily activities, there were a number of daily activities at issue here. Visiting with friends, going shopping, although plaintiff claimed that he could not go without a record where he refers to going shopping and using a list to go shopping to account for his memory impairment. And plaintiff stated, I believe it was to Dr. Arnold at page 286 of the record, that he likes to grow plants as well as golf when the weather is good. In short, Your Honors, I would submit that the ALJ reasonably resolved the issue of the record and a cognitive impairment. The ALJ adopted the opinions of Dr. McKnight, who examined plaintiff, over the opinions of Dr. Arnold, which were inconsistent with the record as a whole, and that this is a case for the substantial evidence standard of review, and plaintiff fails to show error under that standard. Unless the Court has further questions, I yield my time. All right. Thank you. Thanks. Dr. Arnold, and the MMPI and the MCMI, and the other test that he did, which was the pain patient profile, the P3, as well as the review of records and the mini mental status evaluation. The MMPI and the MCMI are the commonly used tests to determine if an individual has emotional or personality disorders, either on Axis 1 or Axis 2. Dr. McKnight did not do either of those tests. I assume, and I do not know, that DDS did not ask him to or pay him to. Without those tests, it isn't clear whether Dr. McKnight would necessarily have noticed whether or not Mr. Williams was dysthymic, although he does note, Dr. McKnight does, in his report that he had a flat effect. A flat effect is often an appearance or a sign of dysthymia or depression, an inability to have, show emotion flat. Dr. Arnold certainly was aware of Dr. Britt's determination, both from apparently what Mr. Williams said and because he had Dr. McKnight's report. The somatoform disorder is the. Okay, we've got to wrap up. We have it in your brief, so. I would, and I would rely on my brief. Okay, fine. Thank you. We appreciate the argument, and the case is submitted, and we will stand in adjournment or recess. I think it's adjournment.
judges: Snow, Fisher, Berzon